# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Hon. Michael A. Hammer |
| | : | |
| v. | : | Mag. No. 20-10378 |
| | : | |
| SHANILE LYLE | : | **CRIMINAL COMPLAINT** |

I, Elizabeth S. Hornberger, being duly sworn, state the following is true and correct to the best of my knowledge and belief:

**SEE ATTACHMENT A**

I further state that I am a Special Agent with the Federal Bureau of Investigation, and that this Complaint is based on the following facts:

**SEE ATTACHMENT B**

continued on the attached pages and made a part hereof.

 

 

_____
Elizabeth S. Hornberger, Special Agent
Federal Bureau of Investigation

Attested to me by telephone pursuant to Fed. R. Crim. P. 4.1(d)(3) on November 30, 2020, in the District of New Jersey.

 

HONORABLE MICHAEL A. HAMMER
UNITED STATES MAGISTRATE JUDGE

/s/ Michael A. Hammer ESH
_____
Signature of Judicial Officer

**ATTACHMENT A**

**COUNT ONE**
**(Wire Fraud Conspiracy)**

From in or around June 2018 to the present, in the District of New Jersey and elsewhere, the defendant

**SHANILE LYLE,**

knowingly and intentionally conspired with others to devise and intend to devise a scheme and artifice to defraud individuals, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, thereby affecting a financial institution, and, for the purpose of executing and attempting to execute such scheme and artifice to defraud, did transmit and cause to be transmitted by means of wire communications in interstate and foreign commerce, certain writings, signs, signals, pictures, and sounds, including wire transmissions sent from and through New Jersey wire facilities.

In violation of Title 18, United States Code, Sections 1349 and 2.

2

**ATTACHMENT B**

I, Elizabeth S. Hornberger, being first duly sworn, depose and state the following:

**INTRODUCTION AND AGENT BACKGROUND**

1.     I am a Special Agent with the United States Department of Justice, Federal Bureau of Investigation ("FBI"), and have been so employed since 2020. I am currently assigned to the Newark, New Jersey Field Office. My experience as an FBI Special Agent has included the investigation of cases involving fraud. I have received training and have gained experience in interview and interrogation techniques, arrest procedures, computer crimes, computer evidence identification, computer evidence seizure and processing, and various other criminal laws and procedures. The information contained in this Affidavit is based upon my training and experience, conversations with other law enforcement officers, and review of documents and records.

2.     Because this affidavit is being submitted for the limited purpose of establishing probable cause, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause. Unless specifically indicated, all dates, locations, quantities, and dollar amounts described in this affidavit are approximate, and all conversations and statements described in this affidavit are related in substance and in part.

**BACKGROUND**

3.     At various times relevant to this Complaint:

   a.     The defendant SHANILE LYLE ("LYLE") was a resident of New Jersey;

   b.     Victim #1 was a resident of Hawaii;

   c.     Victim #2 was a resident of Kentucky;

   d.     Victim #3 was a resident of Indiana; and

   e.     The Subject Banks were "financial institutions," as that term is defined by 18 U.S.C. § 20.

## PROBABLE CAUSE

4.    From as early as in or around June 2018, LYLE and her co-conspirators received hundreds of thousands of dollars in fraudulently-obtained funds through bank accounts that they controlled. The funds were obtained from victims through a fraudulent technique known as a "lottery scam," in victims were told falsely that they had won large sums of money in a lottery sweepstakes. The victims were told that they had to pre-pay taxes on their winnings and were directed to send checks to cover the tax amounts.

5.    LYLE received dozens of checks ("Victim Checks") totaling at least $675,000 from victims as part of the scheme. LYLE deposited the Victim Checks into bank accounts at multiple Subject Banks that typically had minimal funds on deposit prior to the deposits of the Victim Checks. LYLE transmitted the bulk of the funds that she received, less a fee, to others, including to recipients overseas.

**Victim 1**

6.    In or around June 2018, Victim 1, who was approximately 94 years old at the time, received a phone call stating that she had won approximately $6,000,000 from the Publisher's Clearing House. Victim 1 was told that, in order to collect her winnings, she was required to pay taxes on them. Throughout the subsequent year, Victim 1 received additional telephone calls informing her that she needed to pay various amounts of money in order to receive her winnings. As a result, Victim 1 wrote numerous checks totaling over $500,000. Of this amount, Victim 1 sent LYLE approximately 22 checks, in the total amount of approximately $405,000. LYLE endorsed each check and deposited the associated funds into several bank accounts controlled by LYLE, including at Subject Banks 1 through 3.

7.    LYLE initially told law enforcement that Victim 1 was a member of LYLE's family and that Victim 1 sent the funds to LYLE for LYLE's education. LYLE later admitted to law enforcement that: (a) Victim 1 was not a member of LYLE's family; and (b) LYLE received approximately an amount of funds from Victim 1, of which she acknowledged keeping approximately $10,000 for herself and forwarding the remainder as directed by a co-conspirator.

**Victim 2**

8.    In or around June 2018, Victim 2, who was approximately 75 years old at the time, began receiving telephone calls informing her that she and her family had won a well-known sweepstakes. Victim 2 was informed that she and her family had won $2,000,000 and an automobile. Throughout the subsequent months, Victim 2 received additional telephone calls informing her that, in order to collect her winnings, she was required to pay taxes on them. As a result, Victim 2 purchased cellular telephones and gift cards, which she provided to the fraudsters. In addition, Victim 2 wrote checks that were sent to LYLE and

others. LYLE received three checks from Victim 2, in the total amount of approximately $30,000. LYLE endorsed each check and deposited the associated funds into her bank account at Subject Bank 2.

**Victim 3**

9.     In or around 2018, Victim 3, who was approximately 86 years old at the time, received a telephone call informing her that she had won a large sum of money and an automobile. Victim 3 was told that, in order to collect her winnings, she was required to pay taxes on them. As a result, Victim 3 sent a total of approximately $20,000 to LYLE and others. LYLE received three checks from Victim 2, in the total amount of approximately $6,400. LYLE endorsed each check and deposited the associated funds into her bank account at Subject Bank 1.

5